**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

HOOD ELECTRIC, INC.,                )
                                    )
        Plaintiff,              )
                                    )
v.                                  ) No. CIV-09-70-FHS
                                    )
DODSON CONSTRUCTION COMPANY         )
and SURE TEC INSURANCE COMPANY,     )
                                    )
        Defendants.             )

**OPINION AND ORDER**

Defendants, Dodson Construction Company ("Dodson") and Sure Tec Insurance Company ("Sure Tec"), have filed a Motion to Compel Mediation and/or Arbitration and Stay Proceedings (Doc. No. 11). Dodson and Sure Tec contend this matter is properly submitted to mediation in the first instance and then, if necessary, to arbitration in accordance with the terms of a written contract entered into with Plaintiff, Hood Electric, Inc. ("Hood"). Having reviewed the parties' respective briefs on this issue, the Court agrees with Dodson and Sure Tec and finds the parties are bound to mediate their claims and, should mediation not resolve such claims, submit their claims to mandatory, binding arbitration.

**Background**

On June 14, 2007, Hood, an electrical contractor, entered in to a written contract with Dodson, a general contractor, to provide electrical services in connection with the construction of an Alco Store in Wilburton, Oklahoma. The original contract price for Hood's electrical services was $148,000. Due to weather problems, the construction project was delayed and Hood's electrical work was

1

delayed.  In August of 2007, a representative of Dodson contacted a representative of Hood to inquire about the cost to double up on the electrical services in order to complete the job in less time and get the overall construction project back on track for completion.  A verbal estimate of $83,000 to modify the existing contract was conveyed by Hood to Dodson.  On September 6, 2007, Dodson informed Hood that the extra cost of $83,000 was approved and Dodson directed Hood to commence work on the project and to fax a written quote for the additional cost.  On September 7, 2007, a written change order for an additional $83,521 was faxed by Hood to Dodson.  Hood commenced work on the project and committed extra labor to complete the project within the shortened time frame.  Hood contends Dodson breached the terms of the parties' contract by failing to pay all monies it agreed to pay Hood for the project.  On February 4, 2008, Hood filed a mechanic's lien in the amount of $122,521.10 for the full amount owed by Dodson.  On November 3, 2008, Hood filed suit in the District Court of Latimer County, Oklahoma, against Dodson and Sure Tec.[1]  Hood seeks to recover for breach of contract and, in the alternative, quantum meruit.  On February 24, 2009, Dodson and Sure Tec removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[2]  On February 26, 2009, Dodson answered and asserted counterclaims against Hood for breach of contract, breach of the duty of good faith and fair dealing, fraud, and deceit.

---

[1] Hood alleges that Sure Tec is Dodson's surety on a mechanic/materialman lien discharge bond filed on April 4, 2008, in the amount of $153,151.37.

[2] Hood is an Oklahoma corporation with its principal place of business in Oklahoma and Defendants are Texas corporations with their principal places of business in Texas.  Hood seeks to recover $122,521.10 from Defendants.  Thus, federal court jurisdiction is appropriate as the diversity and amount in controversy requirements of 28 U.S.C. § 1332 have been satisfied.

**Analysis**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15, governs arbitration agreements which are contained within contracts involving interstate commerce.[3] In relevant part, the Act provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 has the effect of creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). The FAA's primary purpose is "to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,' and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-220 (1984) (citing H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)) (footnote omitted); see also Allied-Bruce Terminix Companies, Inc. v. Dobson, 115 S.Ct. 834, 837 (1995) ("[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate."); Moses H. Cone, 460 U.S. at 24 ("Section 2 is a congressional declaration of a liberal

---

[3] Hood does not take issue with Defendants' contention that the parties' contract involves interstate commerce given the interstate negotiations between Hood, an Oklahoma corporation, and Dodson, a Texas corporation.

policy favoring arbitration agreements.").

Section 3 of the FAA provides for a stay of an action until arbitration proceedings have been completed.[4] Arbitration, however, can only be compelled if a valid agreement to arbitrate exists between the parties and the specific dispute at issue falls within the scope of that agreement. See Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1515-16 (10th Cir. 1995) (a valid arbitration agreement and a dispute within the scope of that agreement are condition precedents to arbitration); Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-95 (8th Cir. 1994) ("Before a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement."). An agreement to arbitrate does indeed exist between the parties. A review of the June 14, 2007, written contract between Hood and Dodson reveals that the subject of arbitration is covered under paragraph 20, which provides:

> A. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be subject to dispute resolution procedures, if any set out in the prime Contract. Should the Prime Contract contain no specific requirements for the resolution of disputes, any such controversy or claim shall be resolved, at Contractor's option, by arbitration pursuant to the

---

[4] Sections 3 and 4 of the FAA are the provisions for the enforcement of arbitration rights. Where an issue is arbitrable and one of the parties to the action makes application, section 3 provides for a stay of the trial of an action until arbitration has been completed. Under section 4, where a party has failed or refused to arbitrate under a written agreement for arbitration, the other party may petition the court for an order compelling arbitration. Given the pendency of this action, section 3 is the appropriate provision to be invoked by Defendants.

4

> Construction Rules of the American Arbitration Association then prevailing, and judgment upon the award rendered by the Arbitrator(s) shall be entered in any Court having jurisdiction thereof.

Subcontract, ¶ 20 (attached as Exhibit A to Defendants' Motion). As acknowledged by the parties, the Prime Contract, which is the contract between Dodson and the owner, does contain dispute resolution procedures. In particular, the Prime Contract contains mediation and arbitration provisions:

> §4.5 MEDIATION
>
> §4.5.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.
>
> §4.5.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.
>
> §4.6 ARBITRATION
> §4.6.1 Any claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve

>   disputes by mediation in accordance with the provisions
>   of Section 4.5.
>
>   §4.6.2 Claims not resolved by mediation shall be decided
>   by mandatory, binding arbitration which, unless the
>   parties mutually agree otherwise, shall be in accordance
>   with the Construction Industry Arbitration Rules of the
>   American Arbitration Association currently in effect.
>   The demand for arbitration shall be filed in writing with
>   the other party to the Contract and with the American
>   Arbitration Association, and a copy shall be filed with
>   the Architect.

Prime Contract (attached as Exhibit B to Defendants' Motion).

Given these provisions and the directive of paragraph 20 of the parties' Subcontract, the Court concludes that any controversy or claim arising out of or relating to the Subcontract, or the breach thereof, is necessarily subject to the mediation and arbitration procedures of the Prime Contract. The Court rejects Hood's argument that the language of sections 4.5.1 and 4.5.2 allows it to bypass arbitration and proceed with litigation. In those two sections, there is language providing that mediation shall proceed arbitration **or legal or equitable proceedings.** Contrary to Hood's interpretation, this reference to other proceedings does not authorize Hood to choose between arbitration or the filing of a lawsuit after mediation has been exhausted. Rather, this language reflects the reality that claims arising out of or related to the underlying contract are subject to mediation in the first instance, with other claims outside of that context, i.e. the enumerated waived claims and those relating to aesthetic effect, not bound by mediation or arbitration procedures before resorting to litigation. While the inclusion of the **legal or equitable proceedings** language accounts for the possibility that some claims may proceed down the litigation route, this language does not negate the unmistakably clear language of sections 4.6.1

and 4.6.2 which requires the parties to mediate, then arbitrate, "[a]ny claim arising out of or related to" the parties' Subcontract. Consequently, the Court finds that under the dispute resolution provisions of the Prime Contract, as made applicable by paragraph 20 of the parties' June 14, 2007, written Subcontract, Hood and Dodson are required to first mediate any disputes arising out of or relating to their Subcontract, or the breach thereof, and then, if mediation is not successful, submit their disputes to mandatory, binding arbitration.[5]

Having determined that a valid agreement to mediate and arbitrate exists, the Court must next determine whether the specific disputes at issue fall within the scope of that agreement. The Court concludes that all disputes raised by the parties - those asserted by Hood for breach of contract and quantum meruit and those asserted by Dodson for breach of contact, breach of the duty of good faith and fair dealing, fraud, and deceit - fall within the scope of the parties' agreement to mediate and arbitrate. All such claims arise out of or relate to the parties' Subcontract in that they all involve the provision of electrical services by Hood with respect to the Alco Store project and the payment, or nonpayment, by Dodson for such services. The Court rejects Hood's contention that the claims arise out of a separate, subsequent oral contract which does not contain an arbitration clause. The parties' change in the work order to complete the electrical services in a shortened period of time for the additional cost of $83,521 is not

---

[5] No preliminary step to mediation applies in the context of disputes between Hood and Dodson. Section 4.5.1's language regarding an initial decision by the Architect has no application in the context of disputes between Hood (Subcontractor) and Dodson (Contractor) as section 4.4.1 of the Prime Contractor provides that "[t]he Architect will not decide disputes between the Contractor and persons or entities other than the Owner."

7

a subsequent oral contract, but rather, a modification of the existing June 14, 2007, Subcontract.  Such work order changes are specifically contemplated by the Subcontract, which contains a provision setting forth the terms and conditions for changes in the work.  Subcontract, ¶ 10.  Thus, the Court concludes that disputes which involve a change in the work order are necessarily disputes which arise out of or relate to the underlying Subcontract.

**Conclusion**

Based on the foregoing reasons, the Court concludes that all claims asserted herein by Hood and Dodson are subject to mediation and, if necessary, binding arbitration.  Defendants' Motion to Compel Mediation and/or Arbitration and Stay Proceedings (Doc. No. 11) is therefore granted and this action is ordered stayed until the completion of mediation and, if necessary, arbitration.  The parties shall notify the Court of the resolution of the underlying disputes pursuant to either mediation or arbitration.

It is so ordered this 8th day of April, 2009.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma